THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* HÉCTOR MORALES SILVA, Defendant and Appellant.

No. CR-68-224.      Decided December 16, 1970.

*Gilberto Gierbolini, Solicitor General,* and *Ruth Tentori de Lebrón Velázquez, Assistant Solicitor General,* for The People. *Benjamín Ortiz* for appellant.

*Benjamín Ortiz* for appellant.

PER CURIAM: Appellant having been convicted of the offenses of involuntary manslaughter (33 L.P.R.A. § 635 (2)), and of driving in a state of intoxication (9 L.P.R.A. § 1041), challenges the judgments rendered in this case which punished him to serve the sentences of one year in jail plus the suspension of his driver's license for a term of two years as of the date when his jail term ends, and three months in jail plus the suspension of his driver's license for a year, to be served concurrently.

At the threshold it is necessary to indicate that the defense did not object to the instructions of the trial judge. When he was asked whether he had any to offer he answered no.

A.—Appellant assigns that the trial court erred

1.—In not instructing about sudden emergency.

The evidence clearly shows that while appellant was driving a motor vehicle along Baldorioty de Castro Avenue at a rate of about 40 miles per hour, in a state of intoxication, he swerved towards a safety isle which divides the opposite traffic lanes and ran over two girls. The automobile, after colliding against and bending a traffic sign, overturned into the contiguous lane in the opposite direction, unfortunately falling over one of said girls causing her death.

Appellant testified that when he arrived at Aponte Street a girl suddenly appeared in his way and he applied the brakes and turned the steering wheel toward the left side, towards the fence, and lost control there and turned upside down "with the wheels up, the car remaining in this manner on the other avenue"; that said avenue was somewhat dark, did not have much visibility. On cross-examination he admitted that near the place there were about 12 mercury lampposts. Although he said that he was going along the left lane of Baldorioty de Castro Avenue towards the airport, he admitted that

near there, at Tapia Street, he had to turn to the right to go up Puerto Rico Avenue.

Appellant's testimony that a girl "suddenly appeared in his way" is in conflict with the reality which is that when the accident occurred the girls had already crossed the traffic lanes of Baldorioty de Castro Avenue in the direction from San Juan towards the airport, along the place where appellant alleges he was going, and they were on the grass in the safety isle walking towards a path which would lead them from there to cross the lanes in the direction from the airport towards San Juan.

Therefore, the evidence did not justify any instruction whatsoever about sudden emergency occasioned because one of the girls "suddenly appeared in his way."

2.—In not charging the jury that the prosecuting attorney had to prove beyond a reasonable doubt that defendant's intoxication or drunkenness was the cause of the accident.

In support of this assignment appellant only offers us two citations from American Jurisprudence. The prosecuting attorney does not discuss it.

█ Such instruction was not necessary as the judge included in his extensive instructions the definition of the offense, the fact that lack of circumspection while driving a motor vehicle constitutes negligence, a term which he also defined, and that if the jurors understood that there was negligence on appellant's part and that this was the proximate cause of the accident which brought as a result the death of the victim, it was the jury's duty, if they were satisfied that that has been established beyond any reasonable doubt, to return a verdict of guilty.

3.—In not giving instructions about the term of proximate cause.

Neither appellant nor the Solicitor General discussed this assignment. Our reading of the record convinces us that in effect, although without defining what is proximate cause,

the instructions indicate the necessary standards about this issue in discussing the possible negligence of one or more of the girls.

4.—In charging the jury that defendant had to establish and that he had the burden of proof to show that the negligence of the victim was the only cause of the accident.

■ The instruction in question was not given in those terms. On the contrary the trial court correctly charged, concerning the victim's negligence, that although the evidence should establish the existence of contributory negligence as the proximate cause of the accident, "[T]his does not mean, ladies and gentlemen of the Jury, in any manner that when defendant alleges the defense that the accident was due to the victim's negligence or to a third person's negligence and does not establish that defense to your satisfaction, you have, then, the obligation of finding defendant guilty, because then, you would be requiring defendant to establish his innocence beyond reasonable doubt, when it is the prosecuting attorney in representation of the People of Puerto Rico in this case, as in any other criminal cause, upon whom it is incumbent to establish defendant's guilt beyond reasonable doubt."

5.—In its instructions about speed.

■ After the trial judge indicated to the jury that the maximum speed at the place of the accident was 25 miles per hour, as there was no sign allowing a greater one, he informed them that the reasonable speed at which a vehicle should be driven may vary according to the circumstances, giving as an example, visibility and the amount of vehicles or pedestrians that is, "that everything depends on the specific circumstances present at the moment and place of the accident."

The judge did not give specific instructions about slowing down on approaching an intersection but he read to the jury the provisions about speed of the Vehicle and Traffic Law (9

L.P.R.A. § 841) where the slowing down on approaching an intersection, rail crossing, curve, and other specific circumstances is provided.

6.—About the degree of negligence required.

■ Appellant argues that "in involuntary manslaughter gross negligence should also be established." We do not agree. The statutory definition of the offense does not require it. We have already held that if the evidence establishes that the death occurred as a result of the negligent driving of a motor vehicle an offense of involuntary manslaughter has been committed. *People* v. *Olmo*, 89 P.R.R. 80, 83 (1963).

■ B.—Appellant assigns to us, also, that the trial court erred in allowing evidence of appellant's statements before some policemen and other persons in presence of the police.

This assignment is based on the testimony of eyewitness Orestes Calzada to the effect that when he arrived at the scene of the events he heard appellant say that "he was the one driving that car"; that he said this at the time when he was asking where there was a public telephone, to which the witness answered that he did not know but that he could use the one in his house. At that moment the nearest policeman was Policeman Rivas who was "at the other side of the avenue." Appellant then went towards where said policeman was and informed him that he was going to Orestes Calzada's house to use his telephone. Rivas as well as Calzada accompanied him during this act.

The foregoing evidence was clearly admissible for the case had not reached a critical stage of the investigation nor was appellant under police custody and at that time he was not considered as a suspect so that the doctrine which we established in *Rivera Escuté* v. *Delgado, Warden,* 92 P.R.R. 746 (1965) and *People* v. *Guadalupe Rosa,* 94 P.R.R. 180 (1967) was not applicable. It is rather a question of spontaneous statements made by appellant to the public in general

and which witness Calzada heard. *People* v. *Rosado Cancel*, 95 P.R.R. 546, 549, 551 (1967).

According to the foregoing doctrine appellant's statement to the public and which policeman Rivas heard while he was trying to find the persons involved in the accident to interview them, to the effect that "two girls suddenly appeared in my way and I lost control", was also admissible. Then said policeman asked him his name, whether he was the owner of the car, and whether he had run over the victim to which appellant answered yes. *People* v. *Denis Rivera*, 98 P.R.R. 691 (1970); *People* v. *Beltrán Santiago*, 97 P.R.R. 89, 90 (1969); *People* v. *Negrón Vélez*, 96 P.R.R. 408, 425 (1968); *People* v. *González Torres*, 95 P.R.R. 152 (1967); *People* v. *Laguna Rodríguez*, 92 P.R.R. 811 (1965).

In any event, appellant testified that when he arrived at the intersection of Aponte Street "a girl suddenly appeared in my way. . . . They were coming down from Eduardo Conde. . . . One crossed first and then when one crossed I applied the brakes and immediately I swerved the steering wheel to the side so I would not hit myself and I lost control and I overturned with the wheels up, the car . . . the car jumped to the other avenue."

C.—Appellant argues, finally, that the trial court erred in admitting evidence about the state of intoxication of defendant on the basis of a percentage table and in not charging that the presumption which could arise from that percent constituted a presumption which could be rebutted by defendant.

After reading to the jury the provision of the Vehicle and Traffic Law which declares it unlawful to drive a motor vehicle under the influence of intoxicating liquor (9 L.P.R.A. § 1041(a)), the trial court charged the jury that:

"That does not mean, gentlemen of the jury, that a person, for the sole fact that he has consumed alcoholic beverages, is not in condition and cannot drive a motor vehicle, nor does that mean

that the driving of the vehicle under the effects of intoxicating liquor is unlawful, that the driver must be in a state of complete intoxication. What the Act contemplates is that a person who has consumed alcoholic beverages to such degree that the effect of those alcoholic beverages in his organism interferes in such manner with his organism as to preclude the driver from exercising full control over the vehicle, so as to guarantee the safety of life and property while he is driving said vehicle. It is not that he has consumed some liquor nor that he is completely drunk. You are the ones to determine from the evidence introduced in this case whether defendant had consumed such amount of liquor, whatever it may be, as you may judge, that it has been proven to your satisfaction and beyond reasonable doubt, that as a result of the attending circumstances in the accident, the manner in which the same was produced, you understand that the fact of having consumed alcoholic beverages had placed defendant in such a situation, in such a state that that alcohol in his organism interfered with his capacity to actually and effectively control the movements of the vehicle and avoid an accident, whether by slowing down or stopping the vehicle or swerving the vehicle to avoid causing damage to other persons, that is, it is something from every circumstantial point of view, depending on the specific circumstances of each case and on the weighing which you make of all the evidence introduced in the case."

■ No instruction was given in relation to the presumption provided by § 5-801 of the Vehicle and Traffic Law (9 L.P.R.A. § 1041 (b) (3) ) that a person was under the effects of intoxicating liquor if at the time of the analysis there was in his blood 15 hundredths of one percent or more per weight of alcohol. The jury was not informed of this presumption and consequently that it was rebuttable.

There was expert evidence which showed that appellant's blood had .16% of alcohol which is equivalent to eight one-ounce glasses of rum or whiskey or eight beers; that in those conditions a person "is under the influence of alcohol . . . has diminished . . . his normal faculties to react to emergency situations and his normal abilities. . . . And there is loss of inhibitions . . . there is a decrease in the time to react . . .

affects vision . . . ears, produces certain muscular incoordination." Policeman Rivas testified that appellant seemed nervous, restless, was stumbling and a smell of liquor was coming out of his mouth.

Appellant himself, not only tried to rebut the foregoing evidence of his intoxication, but, on the contrary, testified that after five in the afternoon on the day of the events he stayed at home and "I took some drinks" leaving his house at about eight o'clock in the evening. The accident occurred at eight thirty that same evening.

In view of the foregoing not having given the instruction in question, tended to favor appellant. Also, appellant did not request the trial court to give any instruction about this particular nor filed any objection to the ones given.

In view of the foregoing, the judgments rendered in this case by the Superior Court, San Juan Part, on May 6, 1968, will be affirmed.

The Chief Justice and Mr. Justice Santana Becerra did not participate herein. Mr. Justice Pérez Pimentel concurs in the result.

—O—

## ON MOTION FOR RECONSIDERATION

San Juan, Puerto Rico, March 26, 1971

PER CURIAM: Appellant moved for reconsideration on the ground that in the Per Curiam opinion which affirmed the judgment which found him guilty of involuntary manslaughter, it was stated, contrary to the decision of this Court, that since "appellant's testimony that a girl 'suddenly appeared in his way' is in conflict with the reality which is that when the accident occurred the girls had already crossed the traffic lanes of Baldorioty de Castro Avenue in the direction from San Juan towards the airport, along the place where appellant alleges he was going, and they were on the

grass in the safety isle walking towards a path which would lead them from there to cross the lanes in the direction from the airport towards San Juan [t]herefore, the evidence did not justify any instruction whatsoever about sudden emergency occasioned because one of the girls 'suddenly appeared in his way.' "

Appellant is right in that what was stated above is against the doctrine established by this Court to the effect that "any sign of evidence which justifies a defense is sufficient for the Court to instruct the jury on that defense, so that the jury decides whether or not it should give credibility to that evidence." (Appellant's Motion for Reconsideration.)

■ The instructions of the same having been examined we found that appellant did not request any instruction about sudden emergency and also that the judge expressly instructed the jury in the following manner:

". . . The evidence tends to show that the victim was walking accompanied by three friends, and I repeat, the theory of the defense is that the accident was not caused by defendant's negligence, but that it was the sole and exclusive result of the negligence of the victim and/or of her companions. There is no doubt that if in a case of this nature it were established that the accident was not caused by the negligence of defendant, but that it was caused by the negligence of the victim and/or her companions, then, the defendant would not be guilty of criminal liability. . . ." (Tr. Ev. 390.)

.       .       .       .       .       .       .       .

"So that, ladies and gentlemen of the jury, in this case, as I told you just a moment ago, the defense that the accident was due only to the negligence of the victim and/or her companions has been alleged by defendant. There is no doubt that in situations of this nature, not only should we pay attention to the negligence of the person driving the vehicle, but also we must look upon the negligence of the prejudiced person or of any other person. In the first place, the direct negligence is the negligence of the person who performs the unlawful act, in the second place, it is a question of contributory negligence that is, the negligence of

the person who was not very foresighted and careful with her own person in order to protect herself of any negligent act or of the negligence of another person extraneous to the defendant, and extraneous to the victim, which might be the proximate cause of the accident which caused the death, but it is necessary that this contributory or contributing negligence of the victim or of any other person be established by the evidence. There is no doubt that that evidence, I mean, that type of negligence might be alleged by the defense and there would be an exemption from liability, but for it to be a total exemption from criminal liability on the part of the defendant it must be established as I just told you a moment ago, that that contributory negligence was the sole and actual cause of the accident which caused the death, this does not mean, ladies and gentlemen of the jury, in any manner that when defendant alleges the defense that the accident was due to the victim's negligence or to a third person's negligence and does not establish that defense to your satisfaction, you have, then, the obligation of finding defendant guilty, because then, you would be requiring defendant to establish his innocence beyond reasonable doubt, when it is the prosecuting attorney in representation of the People of Puerto Rico in this case, as in any other criminal cause, upon whom it is incumbent to establish defendant's guilt beyond reasonable doubt." (Tr. Ev. pp. 392–3.)

The motion for reconsideration will be denied.